# Exhibit 31

# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

**ATTORNEY-CLIENT PRIVILEGED**
**CONFIDENTIAL**

| | |
|---|---|
| **TO:** | Paramount Energy & Commodities SA |
| **FROM:** | Baker & Hostetler LLP |
| **DATE:** | May 8, 2023 |
| **SUBJECT:** | U.S. Sanctions Analysis for DMCC's Dividend Distribution |

   This memorandum details our analysis regarding whether there are any U.S. sanctions issues arising from a potential dividend disbursement from Paramount Energy & Commodities SA ("**Paramount SA**") to its shareholders (the "**Dividend**"). The funds constituting the Dividend are derived solely from Paramount SA's wholly owned subsidiary, Paramount Energy & Commodities DMCC ("**Paramount DMCC**"), which earns such funds by engaging in the maritime trading of Russian-origin crude oil sold above the price cap established by the United States and allies in December 2022.[1]  The analysis herein focuses on the laws and regulations administered by the U.S. Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and relies on the assumption that both companies are in full compliance with all applicable laws, including those targeting Russia.  Further, we understand that the current business activities of Paramount SA and Paramount DMCC are not subject to the OFAC sanctions regulations.

   The analysis and conclusions referred to herein are dependent solely upon factual information that has been provided or communicated to us.  We have undertaken no independent verification of such facts.  If any facts differ from those presented to us, then the analysis and conclusions presented herein may differ materially and should thus not be relied upon.  Please let us know if any of the facts or assumptions relied upon in this memorandum are incorrect or incomplete.

---

[1] OFAC, Determination Pursuant to Section 1(a)(ii) of Executive Order 14071.

Paramount Energy & Commodities SA
May 8, 2023
Page 2

## I. Factual Overview

Paramount SA, a Swiss company headquartered in Geneva, Switzerland, directly owns 100% of Paramount DMCC, which is located in Dubai, United Arab Emirates. Paramount SA is indirectly owned 50% by a Dutch citizen domiciled in Switzerland (the "**Swiss Shareholder**"), and 50% by a U.S. permanent resident (the "**U.S. Shareholder**").

Paramount SA's operations primarily consist of owning petroleum, oil, gasoline, and liquified natural gas terminals, as well as trading and shipping oil and gas products. Paramount SA's current business is focused on western countries excluding the U.S., with business conduct in other countries, including African countries. Paramount SA has not been involved in the trading or transportation of Russian-origin oil or petroleum products since mid-2022. Paramount DMCC's business focuses on oil and gas trading and transportation of oil products between Russian and China, where such trades are conducted at prices exceeding the price caps implemented by G7 member countries (Canada, France, Germany, Italy, Japan, the United Kingdom, the United States, and the EU). Importantly, no U.S. person (including the U.S. Shareholder) is involved in Paramount DMCC's day-to-day business operations or any trading or transportation of Russian-origin oil, and neither are Paramount SA or any of its employees. The Swiss Shareholder has confirmed that Paramount SA and Paramount DMCC do not employ any U.S. citizens or permanent residents, and those businesses have no nexus to the United States except to the extent that U.S. dollars are the currency for certain of their transactions. Please note that after the inversion, Paramount SA will be hiring a U.S. person as the compliance officer of the company.

It is our understanding that Paramount DMCC would issue the Dividend to Paramount SA, which would in turn issue the Dividend to the Swiss Shareholder and the U.S. Shareholder. As DMCC's business is almost exclusively, if not wholly, engaged in the trading and transportation of Russian-origin crude oil above the price cap, the Dividend consists of funds generated from activities that would be prohibited if they involved a U.S. person. We understand that the Dividend would be issued in the normal course of business and in accordance with DMCC's corporate policies, not in exchange for any specific services from any of the shareholders.

## II. Issuance of the Dividend Would Not Violate U.S. Sanctions

U.S. sanctions against Russia restrict the activities of U.S. persons, which include U.S. businesses, U.S. citizens and permanent residents located anywhere in the world, and any person in the United States or its territories.[2] These sanctions include the price cap pertaining to Russian crude oil and petroleum products,[3] the Russian Harmful Foreign Activities Sanctions,[4] and the Ukraine-/Russia-Related Sanctions (collectively, the "**Russia Sanctions**").[5] To the best of our knowledge, none of these sanctions apply to the current activities of Paramount SA or Paramount

---

[2] As a U.S. person includes any individual or entity in the United States, foreign travelers in the U.S. must comply with the OFAC sanctions.
[3] See Executive Order 14071 and OFAC's February 3, 2023 Guidance on Implementation of the Price Cap Policy for Crude Oil and Petroleum Products of Russian Federation Origin.
[4] Russian Harmful Foreign Activities Sanctions Regulations, 31 CFR Part 587.
[5] Ukraine-/Russia-Related Sanctions Regulations, 31 CFR Part 589.

Paramount Energy & Commodities SA
May 8, 2023
Page 3

DMCC because, as stated above, Paramount SA and Paramount DMCC are not U.S. persons, and it is our understanding that they do not currently employ U.S. persons, so DMCC's current business operations are not subject to the jurisdiction of the OFAC sanctions.[6]

Similarly, the Swiss Shareholder is not a U.S. person because he is neither a U.S. citizen nor a U.S. permanent resident; as stated above, he is a Dutch citizen. The U.S. Shareholder is a U.S. person because he is a U.S. permanent resident. Therefore, the activities of the U.S. Shareholder are subject to the jurisdiction of the U.S. sanctions, including those relating to the maritime transport of Russian oil and petroleum products above the price caps. The Russia sanctions thus prohibit the U.S. Shareholder from trading, financing, shipping, insuring, flagging, or brokering the maritime transport of Russian crude oil or petroleum products above the relevant price caps.[7]

Notwithstanding the origin of the funds for the Dividend (i.e., DMCC's trading in Russian-origin crude oil above the price cap), we believe that the issuance of the Dividend and receipt of it by the U.S. Shareholder and the others does not fall within any U.S. sanctions prohibitions. As stated above, we understand that DMCC's business is in compliance with all applicable laws. The U.S. Shareholder is not involved in any trading activities of any Paramount entity and is not involved in the day-to-day operations of Paramount SA or DMCC. He would simply be receiving funds from a non-Russian person as a result of being a 50% shareholder of Paramount SA.

In addition, neither Paramount DMCC nor, to our knowledge, any of its employees, customers or other business partners, are blocked or designated persons, meaning that they are not listed on or subject to OFAC's List of Specially Designated Nationals or Blocked Persons or other similar sanctions list, which prohibit U.S. persons from engaging in business dealings with the designated persons. We assume that the funds constituting the Dividend are not property of blocked or designated persons. Therefore, U.S. sanctions do not prohibit the U.S. Shareholder from accepting the Dividend indirectly from Paramount DMCC, even if Paramount DMCC earned the funds by performing activities that the U.S. Shareholder cannot legally perform.

### III.     Sanctions Risks Associated with the Issuance of the Dividend

To the extent there is some sanctions risk regarding the Dividend, we believe that risk is very low. The potential risks that we see include the imposition of secondary sanctions on Paramount DMCC due to its activities and potentially against Paramount SA and the recipients of the Dividend, as well as a possible sanctions evasion allegation. However, as noted, we believe this risk to be very low. The risk related to the possible imposition of secondary sanctions exists irrespective of the Dividend, and we do not believe that the issuance of the Dividend materially increases the risk of secondary sanctions being imposed on Paramount DMCC, Paramount SA, the U.S. Shareholder, or the Swiss Shareholder.

---

[6] Paramount SA is in the process of hiring a new compliance officer. The compliance officer is a U.S. person. We expect his employment with Paramount SA to formally begin sometime in May 2023.

[7] OFAC, Determination Pursuant to Section 1(a)(ii) of Executive Order 14071 and OFAC's February 3, 2023 Guidance on Implementation of the Price Cap Policy for Crude Oil and Petroleum Products of Russian Federation Origin, which prohibits U.S. persons from providing covered services, including "Trading/commodities brokering; Financing;  Shipping; Insurance, including reinsurance and protection and indemnity; Flagging; and Customs brokering if the Russian oil or Russian petroleum products are purchased [above] relevant price cap."

Paramount Energy & Commodities SA
May 8, 2023
Page 4

We believe that OFAC potentially could interpret the Dividend to be a possible indicator of U.S. sanctions evasion on the part of the U.S. Shareholder. The basis of the argument may be that the U.S. Shareholder is benefitting from the operations of a company in which he indirectly owns a 50% share, and such company's business activities would not be not authorized under the Russia Sanctions if there was U.S. person involvement.[8] If OFAC made such an allegation, which we believe is a remote possibility, it could involve the issuance of a proposed charging letter and we would send back a written response refuting the proposed charging letter. We believe that we would have a good chance of prevailing for several reasons. One reason is that the Dividend is a reasonable distribution of Paramount DMCC's earnings to its shareholders. Also, the U.S. Shareholder acquired his interest in Paramount SA after Paramount DMCC began trading in Russian-origin oil but before the imposition of the price cap, and the U.S. Shareholder is not involved in DMCC's operations. Therefore, without additional proof to the contrary, it would be unreasonable for OFAC to allege that the Dividend alone reflects the U.S. Shareholder's efforts to conduct or benefit from prohibited activities through Paramount SA and Paramount DMCC.

### IV.    Conclusion

Under the Russia Sanctions, the U.S. Shareholder, the Swiss Shareholder, Paramount SA, and Paramount DMCC may process the Dividend despite the fact that the funds comprising the Dividend are derived from activities prohibited to U.S. persons such as the U.S. Shareholder.

Should you have any questions, please do not hesitate to contact us.

---

[8] Per Executive Order 14071, pursuant to which OFAC issued the price caps, "[a]ny transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order is prohibited." OFAC's guidance pertaining to the price caps warns that "U.S. persons providing covered services are required to reject participating in an evasive transaction . . . and report such a transaction to OFAC."